## IN THE UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF VIRGINIA

### Alexandria Division

| | | |
|---|---|---|
| Leon Johnson, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:23cv185 (RDA/IDD) |
| | ) | |
| T. Green, *et al.*, | ) | |
| Defendants. | ) | |

### <u>MEMORANDUM OPINION</u>

Plaintiff Leon Johnson ("Plaintiff" or "Johnson"), a Virginia inmate proceeding *pro se*, filed this action pursuant to 42 U.S.C. § 1983 alleging that on December 15, 2022, while detained at the Sussex I State Prison ("Sussex I"), Waverly, Virginia, a Virginia Department of Corrections ("VDOC") facility, Defendants Green and McCoy violated her First Amendment rights to the free exercise of her religion and her rights under the Religious Land Use and Institutionalized Persons Act ("RLUIPA") because she was not provided with a television ("TV") to watch a DVD of a religious program while in the Restrictive Housing Unit ("RHU"). Dkt. No. 1 at 3, 6-12. The Defendants filed a motion for summary judgment asserting that judgment should be entered in their favor because Johnson had failed to exhaust her administrative remedy. Dkt. Nos. 13, 14. Plaintiff exercised her opportunity to file responsive materials pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), and Local Rule 7(K), and filed a motion to amend judgment, affidavit, and a response on January 17, 2024, Dkt. Nos. 15-17;[1] a motion to appoint counsel on April 19, 2024, Dkt. No. 21; and a motion for a default judgment on July 19, 2024, Dkt. No. 24.

In the affidavit attached to one of her January 17, 2024 responses to the motion for summary judgment, Plaintiff averred that she filed a grievance on March 29, 2023. Dkt. No. 16 at

---

[1] Plaintiff filed similar pleadings on May 8, 2024. Dkt. Nos. 22, 23.

2.[2] In a separate unsworn brief also filed on January 17, 2024, Plaintiff attached a Regular Grievance form that indicates it was executed on March 29, 2023, and denied on March 30, 2023. Dkt. No. 17 at 6-7.

On March 8, 2024, after reviewing the pleadings, the Court ordered Defendants to reply to Plaintiff's response to the motion for summary judgment (specifically the document entitled "Regular Grievance," dated March 29, 2023). Dkt. No. 18. The Order, in accordance with *Roseboro*, expressly advised Plaintiff that she was "entitled to file a response opposing the Defendants' reply by filing counter-affidavits, statements, exhibits or other legal or factual material that supports [her] position in the case. In addition to such material, the Plaintiff is entitled to file a legal brief in opposition to the one filed by the Defendants." *Id.* at 1.[3]

Defendants filed a response on March 27, 2024, and disputed the authenticity of the alleged Regular Grievance dated March 29, 2023 ("Regular Grievance") that Plaintiff submitted as an attachment to an unsworn pleading. Dkt. Nos. 19 at 2; 19-3 at 1-2. In so disputing the authenticity

---

[2] In her unsworn Complaint, Plaintiff stated that she filed her grievance on January 2, 2023, and that "there was no answer back." Dkt. No. 1 at 4. *See Zachair, Ltd. v. Driggs*, 965 F. Supp. 741, 748 n.4 (D. Md. 1997) (explaining that a plaintiff is "bound by the allegations contained in [his] complaint and cannot, through the use of motion briefs, amend the complaint"), *aff'd*, 141 F.3d 1162 (4th Cir. 1998); *see also Wasco Prods., Inc. v. Southwall Techs., Inc.*, 435 F.3d 989, 992 (9th Cir. 2006) ("Simply put, summary judgment is not a procedural second chance to flesh out inadequate pleadings.") (Internal quotation marks omitted); *Shanahan v. City of Chicago*, 82 F.3d 776, 781 (7th Cir. 1996) ("A plaintiff may not amend his complaint through arguments in his brief in opposition to a motion for summary judgment.").

[3] The Order also explained what an affidavit is and how to create an affidavit, and further advised Plaintiff that she

> must identify all facts stated by the Defendants in their reply with which the Plaintiff disagrees. In addition, the Plaintiff must set forth, either in her own affidavit or the affidavits of other witnesses, her version of the facts. The Plaintiff, in her affidavits and exhibits, should address herself as clearly as possible to the issues and facts stated in the complaint and in the reply filed by the Defendants.

*Id.* at 2.

of the form, Defendants relied on affidavits from the Sussex I Operations Manager; the custodian of the grievance files; and the person who allegedly reviewed and denied the grievance. Dkt. No. 19 at 2.

Plaintiff replied to Defendants' objection by filing an unsworn brief entitled "Response to Motion for Summary Judgment," and a motion to appoint counsel. Dkt Nos. 20, 21. Her brief, stated, but did not aver, that the Regular Grievance was signed by "A. Wethington now known[] as A. Godett." Dkt. No. 20 at 1. On May 8, 2024, Plaintiff filed a second affidavit, Dkt. No. 23, in which she averred, consistent with her first affidavit filed on January 17, 2024, that she filed the Regular Grievance on March 29, 2023. Dkt. No. 16 at 2; Dkt. No. 23 at 3. Before the Court can determine the undisputed facts that will comprise the summary judgment record, the Court must resolve the pending motions and Defendants' objection.

## I. Pending Motions and Admissibility of the March 29, 2023 Regular Grievance Form

### A.  Motion to Appoint Counsel.

"A *pro se* prisoner does not have a general right to counsel in a § 1983 action." *Whisenant v. Yuam*, 739 F.2d 160, 163 (4th Cir. 1984), *abrogated on other grounds by Mallard v. U.S. Dist. Court for the S. Dist. of Iowa*, 490 U.S. 296 (1989). Further, this Court's power to appoint counsel under 28 U.S.C. § 1915(e)(1) is discretionary, and, to qualify, an indigent claimant must present "exceptional circumstances." *Id.* Exceptional circumstances exist where a "*pro se* litigant has a colorable claim but lacks the capacity to present it." *Whisenant*, 739 F.2d at 163. Here, there are no such exceptional circumstances.  Moreover, as discussed *infra* at 20-22, the Court has determined that there is no colorable claim because Plaintiff failed to exhaust her administrative remedies *before* filing her complaint in this Court. The motion will therefore be denied.

### B. Motion for Default Judgment.

While Federal Rule of Civil Procedure 55(a) provides for the entry of a default judgment "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend." A court, however, "must 'exercise sound judicial discretion' in deciding whether to enter default judgment, and 'the moving party is not entitled to default judgment as a matter of right.'" *Reynolds Innovations, Inc. v. E-CigaretteDirect, LLC*, 851 F. Supp. 2d 961, 962 (M.D.N.C. 2012) (quoting *EMI April Music, Inc. v. White*, 618 F. Supp. 2d 497, 505 (E.D. Va. 2009) and citing *United States v. Moradi*, 673 F.2d 725, 727 (4th Cir. 1982)).

In this case, Plaintiff argues and avers that Defendants "failed to answer or otherwise defend as to Plaintiff's complaint, or serve a copy of any answer or any defense which it might have had, upon affiant." Dkt. No. 24 at 1. As Defendants' response notes, the record shows that this motion is frivolous. Dkt. No. 25 at 1-2. The record establishes that Defendants filed their Answer on December 11, 2023, and at the same time, they filed their motion for summary judgment, with a brief in support and an affidavit. Dkt. Nos. 12, 13, 14. Each of Defendants' pleadings indicated in the certificate of service that Plaintiff was sent a copy. Indeed, Plaintiff filed a Response to the "Defendants Answer" on January 17, 2024. Dkt. No. 17 at 1. Plaintiff's Response specifically addressed the first six defenses in Defendants' Answer. *Id.* at 1-2. Plaintiff's other responses were in express reply to Defendants' motion for summary judgment, which is based on her failure to exhaust. Dkt. Nos. 20 at 1; 22 at 1. The motion for entry of a default judgment therefore has no merit. The record establishes that the Defendants have acted promptly and intend to defend. Consequently, Plaintiff's declaration and motion will be denied.

C.   Motion to Amend Judgment ("Motion").

The Motion, filed on January 17, 2024, Dkt. No. 15, argues that Plaintiff "exhausted all of her claims against the Defendants prior to filing her lawsuit," and requests entry of "judgment in Plaintiff['s] favor and grant [her] a jury trial," *id.* at 4-5. Although Plaintiff uses the word "judgment," the body of her motion seeks to have Defendants' motion for summary judgment denied; and then requests a trial by jury on the alleged violations of her First Amendment rights and her rights under RLUIPA because she was not provided with a TV to watch a DVD of a religious program. Given the argument contained in the Motion, it will be construed as a response in opposition to Defendants' motion for summary judgment and a motion for a trial by jury. Because the Court, *see infra* at 20-22, has determined that Plaintiff failed to exhaust her administrative remedies before filing her complaint, the motion will be denied.[4]

D.   Defendants' Authenticity Objection.

Under current Rule 56(c)(2),[5] while the proponent of a document does not have to file an affidavit establishing a document's authenticity, the burden "falls 'on the proponent to show that the material is admissible as presented or to explain the admissible form that is anticipated.'" *Akers v. Beal Bank*, 845 F. Supp. 2d 238, 243 (D.D.C. 2012) (quoting Advisory Committee Notes, 2010 Amendment, Rule 56). To be considered as evidence in a motion for summary judgment, documents must be properly authenticated in satisfaction of Federal Rule of Evidence 901(a). *Shanklin v. Fitzgerald*, 397 F.3d 596, 602 (8th Cir. 2005) (affirming district court's exclusion of

---

[4] Moreover, Plaintiff has not otherwise asserted a non-futile basis on which to amend her complaint. Thus, to the extent that the motion actually seeks to make an amendment, it would also properly be denied on this basis.

[5] Federal Rule of Civil Procedure 56(c)(2) states that "[a] party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence."

unauthenticated and inadmissible exhibits on motion for summary judgment); *Orr v. Bank of America, NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002) (same). Documents can be authenticated by an affidavit of an individual with personal knowledge able to provide evidence "sufficient to support a finding that the matter in question is what its proponent claims." *Orr*, 285 F.3d at 773 (citation omitted). The current process for handling such an objection is discussed in *Jones v. Western Tidewater Reg'l Jail*, 187 F. Supp. 3d 648 (E.D. Va.), *aff'd sub nom. Jones v. Butler*, 671 F. App'x 60 (4th Cir. 2016).

> Under the current version of Rule 56 of the Federal Rules of Civil Procedure, therefore, "facts in support of or opposition to a motion for summary judgment need not be in admissible form; the new requirement is that the party identifies facts that could be put in admissible form." *Wake v. Nat'l R.R. Passenger Corp.*, No. 12-1510, 2013 WL 5423978, at *1 (D. Md. Sept. 26, 2013) (emphases in original) (citing *Niagara Transformer Corp. v. Baldwin Techs.*, Inc., No. 11-3415, 2013 WL 2919705, at *1 n.1 (D. Md. June 12, 2013)). Thus, instead of "a clear, bright-line rule ('all documents must be authenticated')," Rule 56(c)(2) now prescribes a "multi-step process by which a proponent may submit evidence, subject to objection by the opponent and an opportunity for the proponent to either authenticate the document or propose a method [of] doing so at trial." *Forward Magazine, Inc. v OverDrive, Inc.*, No. 10-1144, 2011 WL 5169384, at *2 (W.D. Mich. Oct. 31, 2011). Notably, "the objection [now] contemplated by the amended Rule is not that the material 'has not' been submitted in admissible form, but that it 'cannot' be." *Ridgell v. Astrue*, No. DKC 10-3280, 2012 WL 707008, at *9 (D. Md. Mar. 2, 2012) (quoting *Forward Magazine*, 2011 WL 5169384, at *2).

*Jones*, 187 F. Supp. 3d at 654; *accord Shalom v. Payless Shoesource Worldwide, Inc.*, 921 F. Supp. 2d 470, 472 n.2 (D. Md. 2013) (citations omitted); *cf. Orsi v. Kirkwood*, 999 F.2d 86, 92 (4th Cir. 1993) ("It is well established that unsworn, unauthenticated documents cannot be considered on a motion for summary judgment.") (decided under pre-2010 version of Rule 56(c)).

In response to the motion for summary judgment, Plaintiff submitted a five-page "Motion to Amend Judgment," Dkt. No. 15, which references her affidavit, Dkt. No. 16, and argues that she was denied the necessary forms to exhaust and therefore she was not required to exhaust, *id.* at 3. Plaintiff, however, claimed to have such forms in her complaint and used them, as is evident

from her statement in the complaint that she filed a grievance on January 2, 2023. Dkt. No. 1 at 4. Moreover, the affidavits submitted by Defendants establish that Plaintiff was not denied access to Informal Complaint or Regular Grievance forms, which she used on 53 occasions between December 1, 2022, and October 2023. Dkt. Nos. 14-1 at ¶ 13; 24-44.[6] In addition to her statement in the complaint that she "wrote a grievance" on January 2, 2023, she used one of those forms to file her informal written complaint at the end of February 2023. *See infra* at 16.

The affidavit Plaintiff filed in response to the motion for summary judgment averred that "[o]n March 29, 2023, [she] filed a regular grievance it was answer [sic] by the intake decision." Dkt. No. 16 at 2. The alleged Regular Grievance form, however, does not indicate the date or time of the incident; and the form is not date stamped received by the Grievance Office. Dkt. No. 17 at 6-7. There is a category on the form labeled "Non-Grievable," and there are seven boxes with pre-printed reasons. The reason checked on the form is "Beyond the control of the Department of Corrections." *Id.* at 7. A check in this box indicating that the matter is beyond the VDOC's control is nonsensical because this matter, as Plaintiff argues in her various pleadings, is covered by VDOC regulations. *See* VDOC OP 841.3 III (X)(C) (allowing "closed circuit televisions in their cells where applicable, unless otherwise prohibited based on legitimate safety and security concerns, consistent with the mission of the facility"); VDOC OP 841.3 III (D) (chaplains are required to review DVDs for use in religious programs). The signature, in red ink, for the Institutional Ombudsman on the form contains a partially illegible surname, "A. Withee….," and it is dated "3/30/23." Dkt. No. 17 at 7.[7] Given the lack of a date stamp of receipt and the illegible signature, as well as the lack of information within the content of the disputed Grievance form,

---

[6] Plaintiff has not disputed Defendants' response in her subsequent filings.

[7] A version of the document where the red ink is visible was attached to Defendants' response. Dkt. No. 19-3 at 6.

Plaintiff has not provided any basis upon which the Court could determine that the alleged Regular Grievance is authentic or admissible.

"To establish that evidence is authentic, a proponent need only present 'evidence sufficient to support a finding that the matter in question is what the proponent claims.'" *United States v. Vidacak*, 553 F.3d 344, 349 (4th Cir. 2009) (citation omitted). "Under amended Rule 56, 'facts in support of or opposition to a motion for summary judgment need not be in admissible form; the new requirement is that the party identifies facts that could be put in admissible form.'" *Grimes v. Merritt*, No. JKB-11-2687, 2015 WL 5158722, at *4 (D. Md. Aug. 31, 2015). The Defendants' objection is based upon the affidavits from H. Spencer, Operations Manager at Sussex I, C. Sherrill, the Institutional Ombudsman at Sussex I; and Angela Godett (*née* Wethington).

Spencer reviewed the alleged Regular Grievance form submitted by Plaintiff and averred that while "Angela Wethington was the former Institutional Operations Manager at" Sussex I, she left that position on February 10, 2023, and became a Unit Manager at Sussex I. Dkt. No. 19 at 1. Thus, on March 30, 2023, the date on which Plaintiff alleges Wethington rejected the March 29, 2023 Regular Grievance, Wethington "was no longer the Institutional Operations Manager and was therefore no longer the Department Head over the Grievance Department." *Id.* at 2.

Spencer further averred that the form was not authentic because: (i) it was signed in red ink, which staff at Sussex I do not use to sign documents; and (ii) that the document was not date stamped as required if it was received by the Grievance Department. *Id.* Spencer also averred that he did not recall any other person working in the Sussex I "Grievance Department in March 2023 with the initials 'A. W.'" *Id.* at 2-3.

Sherrill, the Institutional Ombudsman at Sussex I, was responsible for maintaining the grievance files on inmates incarcerated at Sussex I, and she reviewed the Regular Grievance

submitted by Plaintiff and then searched Plaintiff's Sussex I Grievance File for that grievance. Dkt. No. 19-2 at 1. VDOC policy requires that all Regular Grievances rejected at intake be kept in the inmate's Grievance File. Sherrill reviewed "each page" in Plaintiff's Sussex I Grievance File and determined that the alleged March 29, 2023 Regular Grievance form "was not in [Plaintiff's] file." *Id.* at 2. "If Johnson had submitted a Regular Grievance that was rejected at intake, the document would reflect a date stamp, and a copy of it would be in Johnson's Grievance File." *Id.* at 3. *See United States v. Parker*, 761 F.3d 986, 992 (9th Cir. 2014) (recognizing that a custodian of record may testify "that a diligent search failed to disclose a public record or statement" where "the testimony or certification is admitted to prove that the record or statement does not exist").

Finally, A. Godett, (*née* A. Wethington), reviewed the Regular Grievance form submitted by Plaintiff and avers that the signature on the form is not hers. Dkt. No. 19-3 at 1. Godett avers that she left Institutional Operations Manager at Sussex I on February 10, 2023, and that, after that date she no longer supervised the Grievance Office. *Id*. At the time the grievance was allegedly rejected, March 30, 2023, Godett was a Unit Manager at Sussex I. Godett further avers that she never signed any documents in red ink and that she always used a pen with either black or green ink. *Id.* at 1-2. Godett also averred that the signature on the form, which was not hers, appeared to be a forgery and that she did not know who signed the form. *Id.* at 2.

In response to the Defendants' objection, Plaintiff stated in an unsworn statement that the illegible signature is that of "A. Wethington now known[] as A. Godett," but she provided no basis that would support her unsworn assertion. Dkt. No. 20 at 1.[8] Indeed, Godett averred not only that

_____

[8] *See Herrington v. Hodge*, No. 2:12cv1648—AC, 2016 WL 4361526, at *2 (D. Or. Aug. 12, 2016) (finding that *pro se* inmate failed to properly authenticate administrative grievance and grievance appeals submitted to prison authorities, and failed to establish any personal knowledge that the documents are what they purport to be, or "provide any grounds for authentication by any

it was not her signature, but also that she had left her position that oversaw the Grievance Office on February 10, 2023—47 days before the alleged grievance form was submitted and 48 days before Plaintiff "avers" that she signed it. The custodian also searched Plaintiff's grievance file, twice, and did not locate the alleged March 29, 2023 Regular Grievance form. Lastly, Godett only signed documents in either black or green ink, and Spencer avers that red ink is not used to sign documents at Sussex I.

While "[m]aterial factual disputes cannot be resolved at summary judgment based on conflicting affidavits," *Hall v. Bellmon*, 935 F.2d 1106, 1111 (10th Cir. 1991) (citation omitted), "[t]o come within the protection of this rule, however, the nonmovant's affidavits must be based upon personal knowledge and set forth facts that would be admissible in evidence; conclusory and self-serving affidavits are not sufficient." *Id.* (citing Fed. R. Civ. P. 56(e); *Palucki v. Sears, Roebuck & Co.*, 879 F.2d 1568, 1572 (7th Cir. 1989)). Plaintiff, however, has failed to authenticate the Regular Grievance form through her affidavits. *See* Dkt. No. 16 at 2 (stating that "[o]n March 29, 2023, I filed a regular grievance it was answer [sic] by the intake decision" but failing to aver that the Regular Grievance form she submitted in the instant suit, Dkt. No. 17, is a true and correct copy of the form she allegedly filed on March 29, 2023); *see also Doherty v. Corizon Health*, No. 3:19CV420-HEH, 2022 WL 782777, at *3 (E.D. Va. Mar. 14, 2022) (explaining that the plaintiff's "fail[ure] to include any language in her verification to indicate that she was swearing to the

---

manner permitted by Federal Rule of Evidence 901(b) or 902, either of which would satisfy the requirements of Rule 56(c)"), *aff'd*, 692 F. App'x 379 (9th Cir. 2017). *See also Sullivan v. Dollar Tree Stores, Inc.*, 623 F.3d 770, 778 (9th Cir. 2010) (affirming district court finding that a report was inadmissible because it was untrustworthy, in part, because the exhibits mentioned were not attached and the agency did not issue the report); Fed. R. Evid. 803(8)(B). The absence of the required attachment, in addition to the issues identified in the Defendants' response and recounted herein, also render the alleged Regular Grievance untrustworthy and hence inadmissible. *Beech Aircraft Corp. v. Rainey*, 488 U.S. 153, 167 (1988) ("a trial judge has the discretion, and indeed the obligation, to exclude" a document once the judge "determines [it] to be untrust-worthy").

contents" of a submitted document "renders her entire submission inadmissible"), *aff'd sub nom. Doherty v. Ashby*, No. 22-6356, 2022 WL 4182319 (4th Cir. Sept. 13, 2022); *Herrington*, 2016 WL 4361526, at *2 (finding that *pro se* inmate failed to properly authenticate administrative grievance and grievance appeals submitted to prison authorities, and "fail[ed] to establish any personal knowledge [that the] documents are what they purport to be").[9] The failure to authenticate the grievance form is fatal to its inclusion in the summary judgment record, in light of the serious authenticity issues raised by Defendants and Plaintiff's failure to address them. Here, the critical fact is Plaintiff's averment that the signature on the alleged Regular Grievance is that of "A. Wethington." Notably, Plaintiff fails to explain how someone who had not worked in the Grievance Office for over a month signed the form, does not dispute Spencer's averment that no staff member at Sussex I would sign documents in red ink, and does not dispute Godett's averment that she never signed grievances in red ink. Accordingly, the Defendants' objection to the alleged Regular Grievance form is well taken. Plaintiff has had the opportunity to respond to the objection and has not provided any response explaining a basis for admissibility. The Court therefore finds that the alleged March 29, 2023 Regular Grievance Form is inadmissible, that the Regular Grievance cannot be put in admissible form, and that it will not be made part of the summary judgment record for the purpose of establishing Plaintiff exhausted her administrative remedy.

Accordingly, this matter is now ripe for disposition and, for the reasons that follow, the Defendants' motion for summary judgment will be granted.

## II. Summary Judgement

---

[9] Plaintiff's cursory reference to the grievance in her affidavits, Dkt Nos. 16 at 2; 23 at 3, is not sufficient to authenticate the Regular Grievance submitted in her January 17, 2023 response, Dkt. No. 17, as a true and correct copy of *the* grievance that she asserts that she filed with prison authorities; especially in light of the discrepancies noted by Defendants.

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses, and [the Supreme Court] . . . interpret[s it] in a way that allows it to accomplish this purpose." *Celotex v. Catrett*, 477 U.S. 317, 323-24 (1986). As the Fourth Circuit has noted, summary judgment allows courts "to avoid useless trials where material facts are not disputed and the law points unerringly to the conclusion that one of the parties is entitled to judgment as a matter of law." *Utility Control Corp. v. Prince William Constr. Co.*, 558 F.2d 716, 719 (4th Cir. 1977). It "make[s] possible the prompt disposition of controversies on their merits without a trial, if in essence there is no real dispute as to the salient facts." *Bland v. Norfolk & S.R. Co.*, 406 F.2d 863, 866 (4th Cir. 1969).

"[It] is true that the issue of material fact required by Rule 56(c) to be present to entitle a party to proceed to trial is not required to be resolved conclusively in favor of the party asserting its existence; rather, all that is required is that sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-249 (1986) (citation omitted). Summary judgment is proper "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there [being] no genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Defendants, pursuant to Federal Rule of Civil Procedure 56 and Local Rule 56, set forth a statement of material facts that Defendants contend are undisputed. Plaintiff, however, has not complied with her obligations under those Rules by submitting statements of undisputed and disputed facts. While Johnson did submit an affidavit and two other pleadings, she did not go through Defendants' statement of undisputed facts and indicate precisely which specific facts she

12

was disputing. Johnson's reply is further deficient because she does not provide specific citations to the summary judgment record to dispute any of the undisputed facts set out by Defendants. *See Carlson v. Boston Sci. Corp.*, 856 F.3d 320, 325 (4th Cir. 2017) ("The responsibility to comb through the record in search of facts relevant to summary judgment falls on the parties—not the court."); *Malina v. Baltimore Gas & Elec. Co.*, 18 F. Supp.2d 596, 604 (D. Md. 1998) ("[I]t is the responsibility of the plaintiff, not the court, to identify with particularity the evidentiary facts existing in the record which can oppose the defendant's summary judgment motion. The court . . . is not required to independently comb the record to look for them."); *see also Amnesty America v. Town of West Hartford*, 288 F.3d 467, 470-71 (2d Cir. 2002) ("Fed. R. Civ. P. 56 does not impose an obligation on a district court to perform an independent review of the record to find proof of a factual dispute . . . . Nothing in the federal rules mandates that district courts conduct an exhaustive search of the entire record before ruling on a motion for summary judgment . . . .").

Accordingly, Plaintiff has failed to rebut any of the facts set forth by Defendants, *Gholson v. Murray*, 953 F. Supp. 709, 714 (E.D. Va. 1997), and the Court accepts Defendants' statement of facts as true. *See Integrated Direct Mktg., LLC v. May*, 129 F. Supp. 3d 336, 345 (E.D. Va. 2015) ("In determining a motion for summary judgment, the Court may assume that facts identified by the moving party in its listing of material facts are admitted, unless such a fact is controverted in the statement of genuine facts in opposition to the motion.") (quoting E.D. Va. Loc. Civ. R. 56(B)), *aff'd*, 690 F. App'x 822 (4th Cir. 2017); *see also JDS Uniphase Corp. v. Jennings*, 473 F. Supp. 2d 705, 707 (E.D. Va. 2007) (explaining that movant's statement of undisputed facts is

deemed admitted where nonmovant's response fails to "identify with any specificity which facts, if any, were disputed") (citing E.D. Va. Loc. Civ. R. 56(B)).[10]

### III. Undisputed Statement of Facts

The following statement of uncontested facts is derived from a review of Defendants' statement of undisputed facts, and the summary judgment record.

1.      On December 12, 2022, Johnson was detained at Sussex I. Dkt. No. 16 at 1.

2.      Defendant Green was an Assistant Warden at Sussex I in December 2022, and Defendant McCoy was the Warden at Sussex I in December 2022. *Id.*; Dkt. No. 23 at 1.

3.      Plaintiff executed her complaint on January 21, 2023. Dkt. No. 1 at 14. The envelope Plaintiff used was postmarked January 26, 2023, Dkt. No. 1-2, and it was filed by the Clerk of this Court on February 2, 2023.

*The VDOC Grievance Procedure*

4.      VDOC Operating Procedure 866.1 (the "Grievance Procedure" or "VDOC OP 866.1") "is a mechanism for offenders to resolve complaints, appeal administrative decisions and challenge the substance of procedures." Dkt. No. 14-1 at 1; *see* VDOC OP 866.1, Dkt. No. 14-1 at 7-23. "All issues are grievable except those pertaining to policies, procedures and decisions of the Virginia Parole Board, disciplinary hearings, State and Federal court decisions, laws and regulations, and matters beyond the control of the [VDOC]." Dkt. No. 14-1 at 2. "During formal orientation at each institution, all staff and offenders receive information on the Offender Grievance Procedure, which is available within the institution for staff and offender review." *Id.* at 22.

---

[10] The record of admissible evidence includes the affidavit submitted in support of the motion for summary judgment, Dkt. No. 14-1; Defendants' supplemental affidavits, Dkt. Nos. 19-1, 19-2, and 19-3; and Plaintiff's affidavits, Dkt. Nos. 16, 23.

5.    The Grievance Procedure requires offenders to discuss issues informally with facility staff ("Verbal Complaint") and if there is no resolution the offender must next submit a written complaint. *Id.* at 2, 11. Responses to Informal Complaints are made in writing on the Informal Complaint within 15 days of when the Informal Complaint is logged. *Id.* at 2, 12. "If the offender is dissatisfied with staff's response to their Written Complaint, or if 15 days have passed without staff response to their complaint, the offender may elect to file a Regular Grievance." *Id.* at 12.

6.    Grievances are to be submitted within 30 calendar days from the date of the incident. Prior to submitting a Regular Grievance, the inmate must demonstrate that she has made a good faith effort to informally resolve her complaint. This may be accomplished by submitting an informal/written complaint form to the appropriate department head. Prison staff should respond to the inmate's informal/written complaint within 15 calendar days to ensure that the informal response is provided prior to the expiration of the 30-day time period in which an inmate may file her Regular Grievance. The filing of an informal/written complaint does not satisfy the exhaustion requirement. *Id.* at 2.

7.    When submitting her formal Regular Grievance, the inmate must attach any required documentation to her attempt to informally resolve the issue., which includes a copy of the written complaint. Only one issue per grievance form is addressed. Regular Grievances must be appealed through all available levels of review to satisfy the requirement of exhaustion before filing a lawsuit. *Id.*

8.    Those Regular Grievances that do not meet the filing requirements of OP 866.1 are returned to the inmate within two working days from the date of receipt, noting the reason for return on the intake section of the grievance form. Reasons include, but are not limited to, more

than one issue per grievance, expired filing period, repetitive, request for services, *etc*. The inmate is instructed how to remedy any problems with the grievance when feasible. A copy is made of all grievances returned to the inmate with the justification for return noted on the second page of the grievance form. If an inmate wishes review of the intake decision on any Regular Grievance, she may send the grievance to the Regional Ombudsman for a review. There is no further review of the intake decision. Appealing the intake decision does not satisfy the exhaustion requirement. *Id.* at 2-3.

9.       When filed, a Regular Grievance is given a "date stamp," and even if it is rejected at intake, a copy of the date-stamped, rejected Regular Grievance is placed in the inmate's Grievance File. Dkt. No. 19-2 at 2.

*Plaintiff's Grievance File*

10.       C. Sherrill, Institutional Ombudsman at Sussex I maintains the grievance files on inmates incarcerated at Sussex I, and is aware that Johnson has filed a lawsuit alleging she was not permitted to keep a personal TV while assigned to the RHU at Sussex I, which Johnson alleges violates her right to practice her religion because she is unable to watch religious programming in the RHU. Dkt. No. 14-1 at 1.

11.       Sherrill reviewed Johnson's Grievance File at Sussex I for the period of December 1, 2022, through October 16, 2023, to determine if there were any Written/Informal Complaints or Regular Grievances related to her allegation about not being allowed to have a TV while in the RHU. *Id.* at 4-5.

12.       The Grievance Report indicated Johnson submitted a Written Complaint, No. SXI-23-INF-00903, dated February 27, 2023, which was stamped received in the Sussex I Grievance Office on March 8, 2023, and indicated that the date of the incident was "12/12/2020." Dkt. No.

14-1 at 44. In Johnson's Written Complaint, No. SXI-23-INF-00903, she complained about not having a TV in her cell to watch religious programming in the RHU. Johnson received a response dated March 24, 2023, to her Written Complaint stating that: "No TV's are currently allowed in RHU. Per 841.3 you can request materials from the Chaplain for 'Religious Guidance.'" *Id.* at 4, 44.[11]

13.     Sherrill reviewed Johnson's Sussex I Grievance File and determined that Johnson did not submit any Regular Grievance, either accepted or rejected at intake, regarding her Written Complaint, No. SXI-23-INF-00903, or about not being permitted to have a television set in the RHU. *Id.* at 5.

14.     Sherrill was aware that Johnson claimed to have submitted a grievance earlier, but determined, after reviewing Johnson's Sussex I Grievance File, that the only informal/written complaint that Johnson filed about not having a TV in the RHU for her religious programming was Written Complaint, Log No. SXI-23-INF-00903, dated February 27, 2023, and received in the Sussex I Grievance Office on March 8, 2023. *Id.* at 5.[12] Sherrill reviewed the file for both accepted grievances and grievances rejected at intake and did not find a grievance related to the issue involving the TV in the RHU for her religious programming. Dkt. No. 19-2 at ¶ 5.

15.     Plaintiff avers in an affidavit that "On March 29, 2023, [she] filed a regular grievance it was answer [sic] by the intake decision." Dkt. No. 16 at 2. In the same affidavit, Plaintiff makes two averments regarding Facility Requests, not informal complaints or regular

---

[11] Under VDOC OP 866.1 III (A)(1), an inmate, if "dissatisfied with staff's response to their Written Complaint, or if 15 days have passed without staff response to their complaint, the offender may elect to file a Regular Grievance." Dkt. No. 14-1 at 12.

[12] In her affidavit, Johnson avers that she submitted written complaints on December 5, 12, and 17, 2022, but did not receive any reply. Dkt. No. 16 at 2. In her in sworn complaint, Plaintiff alleged that she "wrote a grievance" on January 2, 2023, and she does not reconcile her complaint with her subsequent affidavits averring that she filed a regular grievance on March 29, 2023.

grievances, that she filed on March 10, 2023 and April 2, 2023. Unlike her averment that she filed a Regular Grievance on March 29, 2023, she avers in both that the documents she filed on March 10, 2023 and April 2, 2023, were "facility request[s] concerning [her] religion service which was answer [sic]." *Id.*[13]

16.    The Grievance Office at Sussex I has no record of Plaintiff ever filing a Regular Grievance on March 29, 2023. *See* Dkt. No. 14-1 at 3-6.

17.    Plaintiff had access to the forms necessary to file a grievance. Dkt. Nos. 14-1 at 2; 16 at 2; 23 at 3.[14]

### IV. Analysis

Defendants seek summary judgment alleging that Plaintiff failed to exhaust her administrative remedies as required by the PLRA. Dkt. No. 14 at 2. Plaintiff avers that she did comply, relying on the March 29, 2023 Regular Grievance, and also that she was denied forms, which rendered the administrative remedy unavailable.  Dkt. Nos. 15 at 3, 23 at 3.

In relevant part, the PLRA provides: "No action shall be brought with respect to prison conditions under [42 U.S.C. § 1983] or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are

---

[13] Plaintiff's averments that she filed the Regular Grievance on March 29, 2023, Dkt. No. 16 at and Dkt. No. 23 at 3, do not establish that the Regular Grievance she submitted, Dkt. No. 17, is authentic, but each averment does establish that Plaintiff did not exhaust her administrative remedy before she filed this civil action.

[14] In her Motion to Amend Judgment, Plaintiff asserts that she "was denied forms . . . that were required in order to pursue the grievance," Dkt. No. 15 at 3, but in her sworn affidavits, she avers that she submitted a Regular Grievance form, indicating that she did have access to the forms necessary to exhaust her administrative remedy, Dkt. Nos. 16 at 2; 23 at 3. Plaintiff's unsworn allegations therefore do not create a dispute of fact here, especially in light of the statements in her sworn affidavits. *See Rader v. Nw. Fed. Credit Union*, No. 123CV160, 2024 WL 388097, at *6 (E.D. Va. Feb. 1, 2024) (explaining that "Plaintiff cannot create a dispute of fact by attacking her own sworn statements").

exhausted." 42 U.S.C. § 1997e(a). Because the exhaustion of administrative remedies is an affirmative defense, a defendant bears the burden of proving lack of exhaustion. *See Jones v. Bock*, 549 U.S. 199, 212, 216 (2007); *Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008). Nevertheless, "exhaustion in cases covered by § 1997e(a) is mandatory," and district courts have no discretion to waive this requirement. *Porter v. Nussle*, 534 U.S. 516, 524 (2002).

The PLRA "requires proper exhaustion," *Woodford v. Ngo*, 548 U.S. 81, 93 (2006) (emphasis added), meaning that the plaintiff must "us[e] all steps that the agency holds out, and do[] so properly (so that the agency addresses the issues on the merits)." 548 U.S. at 90 (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002) (emphasis in original)). In so holding, *Woodford* reasoned that "proper exhaustion" enhances "the quality of those prisoner suits that are eventually filed," for, "[w]hen a grievance is filed shortly after the event giving rise to the grievance, witnesses can be identified and questioned while memories are still fresh, and evidence can be gathered and preserved." *Id.* at 95. Thus, "proper exhaustion" requires "compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Id.* at 90-91. These "critical procedural rules" specifically include grievance timing requirements because, without them, "a prisoner wishing to bypass available administrative remedies could simply file a late grievance without providing any reason for failing to file on time" and, following rejection of the grievance as untimely, "proceed directly to federal court." *Id.* at 95. The PLRA was not intended to "create such a toothless scheme." *Id.*

Plaintiff's unsworn response argues that she was denied the necessary forms to exhaust and that she was not required to exhaust. Dkt. No. 15 at 3; *see Ross*, 578 U.S. at 643 ("A prisoner need not exhaust remedies if they are not 'available.'"); *Younger v. Crowder*, 79 F.4th 373, 379 (4th

Cir. 2023) (same). Here, the affidavits submitted by Defendants establish that Plaintiff was not denied Informal Complaint or Regular Grievance forms, which she used on 53 occasions between December 1, 2022 and October 2023, Dkt. Nos. 14-1 at ¶ 13; 24-44, as well as the February 27, 2023 Informal Complaint and the March 29, 2023 Regular Grievance. In addition, VDOC OP 866.1 was incorporated into Sherrill's affidavit, Dkt. No. 14-1 at 1-2, and the VDOC OP 866.1 states that Informal Written Complaint and Regular Grievance forms are "readily available to offenders in the housing units, other designated locations, [and] staff must inform the offender of the designated location." VDOC OP 866.1, II(B)(1)(a); III(A)(2)(a). Although Plaintiff submitted an affidavit in response to the motion for summary judgment and an affidavit in response to the supplemental response ordered by the Court, she did not dispute the averments of Defendants' affiants. Thus, as set forth in the statement of undisputed facts, it is undisputed that Plaintiff had the appropriate grievance forms available to her.

Importantly, the PLRA also requires that an inmate must exhaust her administrative remedies *before* bringing a suit to challenge prison conditions. *Ross*, 578 U.S. at 635 (citing 42 U.S.C. § 1997e(a)) (holding that the PLRA "mandates that an inmate exhaust 'such administrative remedies as are available' before bringing suit to challenge prison conditions.") (emphasis added);[15] *see Graham*, 413 F. App'x at 662-63 (explaining that the PLRA requires an inmate "to exhaust any "available" administrative remedies before pursuing a § 1983 action in federal court).

---

[15] *Ross* held that courts "may not engraft an unwritten 'special circumstances' exception onto the PLRA's exhaustion requirement" and that "[t]he only limit to §1997e(a)'s mandate is the one baked into its text: An inmate need exhaust only such administrative remedies as are 'available.'" 578 U.S. at 648. Plaintiff argues that the remedies were not available. As noted above, Plaintiff did not have any trouble obtaining forms (53 by the undisputed account of the affiant custodian). In addition, the Court finds, based upon the sworn evidence, that the grievance process and forms were "readily available" to her. *See also Gibson v. Weber*, 431 F.3d 339, 341 (8th Cir. 2005) ("Appellants have presented no evidence that any prison official thwarted an attempt to initiate the procedures or that any official made it impossible for them to file grievances.").

The requirement that a prisoner exhaust before filing "allow[s] a prison to address complaints about the program it administers before being subjected to suit, reduc[es] litigation to the extent complaints are satisfactorily resolved, and improv[es] litigation that does occur by leading to the preparation of a useful record." *Porter*, 534 U.S. at 519. The record before the Court on summary judgment, which includes the affidavits submitted by Defendants, reveals that Plaintiff did not submit a Regular Grievance before she filed her complaint in this action, nor did she submit a Regular Grievance within thirty days of the incident. Dkt. No. 14-1 at 3-6. Because the undisputed facts on summary judgment establish that Plaintiff had available to her the means to file a Regular Grievance and that she failed to do so, Plaintiff has failed to exhaust her claim. Defendants' motion for summary judgment will therefore be granted.

## V. Conclusion

For the reasons outlined above, and through an Order that will be issued alongside this Memorandum Opinion, Plaintiff's Motion to Amend Judgement, Dkt. No. 15, her Motion to appoint counsel, Dkt. No. 21, and her Motion for Declaration for Entry of Default, Dkt. No. 24, will each be DENIED; and Defendants' Motion for Summary Judgment, Dkt. No. 13, will be GRANTED.

Alexandria, Virginia
August 22, 2024

_____ /s/
Rossie D. Alston, Jr.
United States District Judge